UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
OCT 0 8 2015
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

-PS-O-

---

DEMETRIUS McCRAY,

        Plaintiff,

        -v-

**DECISION and ORDER**
15-CV-425EAW

HON. FRANK SEDITA, III, District Attorney of
Erie County, MICHAEL J. HILLERY, Esq., of
counsel attorney for the people,
HON. SHEILA A. DITULLIO, of Erie County Supreme Court,
HON. FAHEY, Associate Judge of the Appellate Division
Fourth Department,
DETECTIVE MARK J. LAUBER, The City of Buffalo Homicide
Bureau Buffalo Police Department,
DETECTIVE WILLIAM DONOVAN, The City of Buffalo
Homicide Bureau Buffalo Police Department,
JIM BEZIO, NYS Investigator General's Office,
ACTING COMMISSIONER ANTHONY J. ANNUCCI,
State of New York Department of Correction and Community
Supervision,
SUPERINTENDENT JOHN DEMARS, Chateaugay Alcohol
Substance Abuse Comprehensive Treatment Center,
and all dept. of security and/or personnel working 6/27/06
and 6/26/06,
SUPERINTENDENT DAVID ROCK, Upstate Correctional
Facility, and/or any personnel working the date of 6/27/06
and 6/29/06,
INVESTIGATOR PETER ARCADI, Troop B Headquarter,
SUPERINTENDENT ERIE COUNTY HOLDING CENTER,
Department of Security; and/or any personnel for Dept.
involved in incident on 6/27/06 and 6/28/06,
CHRISTOPHER J. BELLING, ADA,
FRANK J. CLARK, District Attorney at time of incident,
THOMAS M. FINNERTY, ADA,
THE LEGAL AID BUREAU, that employed counselor for
Daniel J. DuBois,
MICHAEL C. GREEN, Executive Deputy Commissioner,
and any and all employees working around the day of incident
on 11/7/07 or those authorized to release confidential records,
JODY LOMEA, Erie County Medical Center Acting Administrator/
CEO,

        Defendants.

## INTRODUCTION

Plaintiff, Demetrius McCray, an inmate of the Upstate Correctional Facility, has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 2).   Plaintiff asserts a number of claims related to his incarceration immediately before and after his arrest on June 27, 2006, and his prosecution and conviction on two counts of Burglary in the First Degree and one count of Criminal Possession of a Weapon in the Second Degree.  The primary basis of plaintiff's claims is that he was falsely arrested and maliciously prosecuted for Murder in the Second Degree (N.Y.Penal Law, § 125.25(1), (3): "Felony Murder") by City of Buffalo Police Department Homicide Detectives on June 27, 2006, upon his release from the Chateaugay Correctional Facility ("Chateaugay C.F.") in Malone, New York.

Plaintiff claims that the Homicide Detectives who arrested him and the prosecutors who later prosecuted him knew that the victim of the robbery--the predicate of the Felony Murder Charge--had died months after the robbery and shooting as a result of the malpractice of a physician at the Erie County Medical Center ("ECMC"), who had left a "lap" pad in the victim during surgery, but the Detectives and prosecutors failed to provide that evidence to the Grand Jury.  This failure, plaintiff claims, led to his indictment on two counts of Murder in the Second Degree, two counts of Robbery in the First Degree (Penal Law, § 160.15) and one count of Criminal Possession of a Weapon in the Second Degree (Penal Law, § 265.03).  In essence, plaintiff is challenging his conviction and sentence based upon alleged irregularities in his arrest and prosecution.

Plaintiff also alleges that between September 26 and 28, 2006–before his release from Chateaugay C.F., his transport to the Upstate Correctional Facility ("Upstate C.F.") for his release, his arrest upon his release at the Malone State Police Barracks and his receipt at the Erie County Holding Center ("ECHC")--he was subjected to a number of unlawful, aggressive, and abusive pat and strip searches.  Lastly, he alleges that sealed records of a Youthful Offended Adjudication and a "Termination in Favor of Accused" dismissal (Adjournment in Contemplation of Dismissal) ("ACD")) were made part of the public record at sentencing in violation of New York's Criminal Procedure Law ("N.Y. Crim.Proc.L.") and used to enhance his sentence as a Second Violent Felony Offender. For the reasons discussed below, plaintiff's request to proceed as a poor person is granted and the complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*.  Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint.  In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil

Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotation marks and citation omitted). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard before dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam* )).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). Based on an evaluation of the complaint, the Court finds that plaintiff's claims must be dismissed pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and (iii) and 1915A(b), because they fail to state claims upon which relief may be granted and because some are brought against defendants immune from suit.

## A. PLAINTIFF'S CLAIMS[1]

### 1. First Claim[2]

On June 27, 2006, while incarcerated at the Chateaugay C.F. on a parole violation, plaintiff was escorted to an isolation cell ("SHU Box Room") where he was pat frisked "assert[ively]" and subjected to an unauthorized and unsupervised strip search. Plaintiff informed the Correctional Officers that he was scheduled to be released the next day after serving his maximum time and asked why he was being subjected to a forced strip search without supervision and without a ticket or misbehavior report issued against him.   He was verbally threatened and told that if he did not comply the correctional officers would use force to perform the strip search.   Plaintiff became frightened and feared for his life and therefore complied.   Plaintiff claims the strip search was excessive and, when one of the officers thought he had seen something in plaintiff's rectal area, the Officer forcibly penetrated plaintiff's rectum and fondled and caressed his rectal area.   Plaintiff was then placed in mechanical restraints and told by the Superintendent and a Sergeant that he was going to speak to someone once he "arrived w[h]ere he was going."

Plaintiff was later placed in a van and transported to the Upstate C.F. Special Housing Unit in Malone, New York, where he was again subjected to an unauthorized and unsupervised pat and strip search by Correctional Officers in the intake area

---

[1]In light of the procedural posture of this case, initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the recitation of facts is drawn exclusively from plaintiff's complaint and exhibits attached thereto, the contents of which must be accepted as true for purposes of this review. *See Erickson*, 551 U.S. at 93-94, 127 S.Ct. at 2200 (citing *Bell Atl. Corp.*, 550 U.S. at 555-56; 127 S.Ct. at 1959).

[2]Plaintiff's complaint, which is confusing as to who the defendants are and what the claims against them may be, is separated into three separate claims--"First," "Second" and "Thir[]d."

without the supervision of a Sergeant.  Plaintiff asked a Sergeant why he was being

held in SHU without a ticket or misbehavior report when he was scheduled to be

released.  The Sergeant responded that he did not know why plaintiff was there.

Plaintiff again became frightened and feared for his life.  (Complaint, Handwritten

Attachment, First Claim, at pp. 14-17.)[3]

The next day a Correctional Officer placed Plaintiff in mechanical restraints and

advised him that he was being released.  Plaintiff was pat frisked again, picked up by

defendant Peter Arcadi, Investigator, New York State Police, Troop B, and told he was

wanted for questioning by Buffalo Homicide Detectives.  At the Troop B Barracks,

plaintiff was met and then arrested by defendants Mark Lauber and William Donavan,

Buffalo Homicide Detectives, who transported plaintiff to Buffalo.  Plaintiff was first

taken to Central Booking and then to ECHC, where he was pat and strip searched

assertively.  Plaintiff was then indicted on two counts of Murder in Second Degree

(Felony Murder), two counts of Robbery in First Degree, and one count of Criminal

Possession of a Weapon in the Second Degree.  At trial, he was acquitted of Felony

Murder but convicted on the Robbery and Criminal Possession counts.  (*Id.*, at pp. 17-

18.)

At some point following his trial and during the appellate process, plaintiff

received as *Brady* material a memorandum signed by defendants Lauber and Donavan

outlining their strategy for arresting plaintiff following his release from prison.  (*Id.*, at

pp. 18-19, 60-61 (Exhibit--Memorandum of Lauber and Donovan, dated June 28, 2006,

---

[3]Page references are to the Court's Case Management/Electronic Case Filing System (CM/ECF).

File # 06-033, Homicide of . . . Arrest of Demetrius McCray).)  The two Detectives had

arranged with defendant Jim Bezio, New York State

"Investigator" [sic] General's Office at the Troop B Barracks, to apprehend plaintiff and

have him arrested on an outstanding bench warrant (#03351285) issued by Buffalo

City Court.  Plaintiff also learned that he had not been arraigned on that warrant and

the warrant was used only to arrange with the New York State Department of

Corrections and Community Supervision ("DOCCS") to have him delivered to Upstate

C.F. for his release and subsequent transport to the Troop B Barracks in Malone where

he would be arrested.  Plaintiff claims that there was no probable cause to arrest him

on a three-year-old warrant and that the warrant was issued solely to arrange for his

release from prison and subsequent arrest.  This arrest, he claims, tainted the

subsequent arrest, indictment and prosecution on Felony Murder, Robbery, and

Criminal Possession of a Weapon.  He also claims that this scheme to arrest him on an

unlawful warrant caused each of the unlawful and excessive pat and strip searches.

(*Id.*, at pp. 18-22.)

Plaintiff seeks millions of dollars in damages against defendants Lauber;

Donovan; Bezio; John Demars, Superintendent, Chateaugay C.F.; David Rock,

Superintendent, Upstate C.F.; Arcadi; Superintendent, ECHC; Annucci, Acting

Commissioner, DOCCS,[4] for, *inter alia*: the "miscarriage of justice and cruel and

unusual punishment without probable cause . . . and/or sexual assault, during the pat

frisk and unsupervised strip searches; the "pain and suffering, mental anguish, and

---

[4]Plaintiff also appears to sue "any personal [sic] [i]nvolved in/or working" and "officer[s] or employees" at Chateaugay C.F., Upstate C.F., ECHC, DOCCS and Malone Troop B Barracks.  (Complaint, at pp. 23, 25 and 29-30.)

7

excessive force[] used to arrange for [his] arrest . . . at Troop B Barracks under the tainted chain [of] custody and com[m]and of the warrant #03351285 . . . the failure to protect [and]/or grant equal protection, of due process of law, against false arrest/or imprisonment in isolation SHU Box area without pending a misbehavior report [and]/or ticket within 72 hours;" "for false arrest/or imprisonment without proba[ble] cause . . . cruel and unusual punishment of an illegal pat frisk without proba[ble] cause . . .;" and " for false arrest [and]/or imprisonment without probable cause against the tainted warrant #03351285, and cause the tainted chain [of] custody and com[m]and." (*Id.*, at pp. 22-31.)

(a.) Claims relating to pat and strip searches

Plaintiff alleges that the pat and strip searches between June 26 and 28, 2007, were in violation of the Eighth Amendment to the United States Constitution.  These claims must be dismissed on the grounds that they (I) fail to state a claim upon which relief can be granted, and (ii) are barred by the applicable statute of limitations.

*(I) Failure to state claim*

First, the claims related to the pat and strip searches fail to state claims upon which relief can be granted because plaintiff does not name as defendants any of the Correctional Officers or others who conducted the searches.  Rather, he names only the Superintendents of the facilities at issue--Demars (Chateaugay C.F.), Rock (Upstate C.F.) and the unidentified Superintendent of ECHC--and the Acting Commissioner of DOCCS (Annucci).[5]

---

[5]Based on its prior adjudication of numerous prisoner civil rights cases, the Court is aware that Annucci was not the Commissioner of DOCCS in 2006.

It is well established that supervisory officials cannot be liable under 42 U.S.C. § 1983 solely in their roles as supervisors.  *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-95  (1978).  "The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim."  *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).  Instead, a showing of some personal responsibility on the part of a supervisor is required.  In the case of an individual defendant, plaintiff must show that the defendant was personally involved in a constitutional deprivation, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997), or that the defendant, employed in a position of control, failed to remedy the alleged wrong after learning of it, or created a policy or custom under which unconstitutional practices occurred, or was grossly negligent in managing subordinates, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (setting forth five categories under which a supervisory official may be personally involved for liability under § 1983).

Because plaintiff's claims fail to allege the supervisory officials' personal involvement in the alleged constitutional deprivation and because plaintiff does not name any of the individuals who conducted the pat and strip searches at issue, these claims must be dismissed with prejudice.

Second, the allegations related to the pat and strip searches fail to set forth an Eighth Amendment violation.  The bases of plaintiff's claims related to the pat and strip searches are that they were not supervised by a Sergeant and, at times, were excessive or assertive.  During one strip search, plaintiff alleges that a Correctional Officer at Chateaugay C.F. fondled and caressed his rectal area and penetrated his

rectum with a finger because the Correctional Officer claimed he had seen something that could be contraband.  (Complaint, Handwritten Attachment, First Claim at pp. 15-17.)

The United States Court of Appeals recently clarified its prior holding in *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997), relating to sexually assaultive searches, to hold that: "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's desire or to humiliate the inmate, violates the Eighth Amendment['s]" Clause against cruel and unusual punishment. *Crawford v. Cuomo*, --- F.3d --- , 2015 WL 4728170, at *4 (2d Cir. Aug. 11, 2015).  The allegations of the complaint, even when construed in the broadest sense, fail to rise to the level of an Eighth Amendment violation because there simply are no allegations that the Correctional Offices and others who performed the strip searches did so "with the intent to gratify the officer's sexual desire or humiliate the [plaintiff] . . . ." *Id.*

"In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (explaining that the Eighth Amendment analysis turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm") (internal quotation marks omitted)); *Hudson v. McMillan*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (same)).  While plaintiff alleges that during

one strip search at Chateaugay C.F. the Correctional Officer touched and penetrated

his rectum, there are no allegations of any kind to support a plausible claim that the

Officer did so to arouse or gratify himself or humiliate plaintiff. *See Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (To state a claim, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1964). There

are no allegations that this search--nor any other search--was conducted with the

subjective state of mind necessary to support an Eighth Amendment claim--*i.e.*, with

the purpose "to arouse or gratify the officer or humiliate the [plaintiff]." *Crawford*, 2015

WL 4728170, at *4.

As stated by the Second Circuit in *Crawford:*

> To be sure, prison officials looking for contraband may subject inmates to
> reasonable strip searches and cavity searches. *Bell v. Wolfish*, 441 U.S.
> 520, 560, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Indeed prison security
> and safety may require frequent searches of an intensely personal
> nature—and not every such search is properly the subject of a lawsuit.
> Searches that do not uncover contraband may be no less penologically
> justified than those that do. And even an officer who is meticulous in
> conducting a search does not violate an inmate's constitutional rights as
> long as the officer had no intention of humiliating the inmate or deriving
> sexual arousal or gratification from the contact. But a search may not be
> undertaken maliciously or for the purposes of sexually abusing an inmate.
> *See Hudson v. Palmer*, 468 U.S. 517, 528, 104 S.Ct. 3194, 82 L.Ed.2d
> 393 (1984).

*Id.* Here, there are no allegations to support a claim that the searches were conducted

for any purpose other than prison safety and security.  All the searches were

conducted before, at the time of, or subsequent to transfers and transports of plaintiff

from different parts of a facility or from one facility to another facility or place.

Accordingly, the Court finds that plaintiff has failed to state an actionable claim under

the Eighth Amendment and because, as set forth below, plaintiff's claims are barred by the statute of limitations, any amendment of the complaint would be futile and leave to replead is denied.

(ii.) *Statute of limitations*

The statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 in New York is the three-year period provided for in New York's CPLR § 214(2). *Owens v. Okure*, 488 U.S. 235, 251, 109 S. Ct. 573, 582, 102 L. Ed.2d 594 (1989); *Jewell v. County of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990). In addition, federal courts are required to borrow New York's rules for tolling the statute of limitations unless the rules are inconsistent with federal law. *Board of Regents of University of State of New York v. Tomanio*, 446 U.S. 478, 487-491, 100 S. Ct. 1790, 1796-1799, 64 L. Ed.2d 440 (1980). Plaintiff's Eighth Amendment claims related to the pat and strip searches all relate to searches that occurred between June 26 and 28, 2006. It is, therefore, readily apparent that the three-year time period during which plaintiff could properly bring these claims expired well before he filed this action on or about April 21, 2015--the date plaintiff signed the complaint. *See Houston v. Lack*, 487 U.S. 266, 271, 108 S. Ct. 2379, 2382, 101 L. Ed.2d 245 (1988) (A *pro se* prisoner litigant's papers are deemed to have been filed when they are placed in the hands of prison officials for mailing); *see also Johnson v. Coombe*, 156 F.Supp.2d 273 (S.D.N.Y. 2001) ("Although it is not clear when the plaintiff gave his complaint to prison officials, '[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it.'") (quoting *Torres v. Irvin*, 33 F.Supp.2d 257, 270 (S.D.N.Y. 1998) (citing cases)). The Court finds no basis to toll the limitations period,

*see* Article 2 of New York's CPLR.  Accordingly, plaintiff's Eighth Amendment claims related to the pat and strip searches are time-barred.[6]

(b.) Claims relating to arrest and prosecution

In addition to the claims related to the pat and strip searches, plaintiff's First Claim asserts, as liberally construed, claims of false arrest and imprisonment and malicious prosecution against the defendants involved in his arrest and transport to Buffalo following his release from the Upstate C.F. on or about June 28, 2006--*viz.*, Buffalo Homicide Detectives Lauber and Donavan; Bezio, an employee of the New York State Inspector General's Office; and New York State Police Investigator Arcadi. These claims must be dismissed because they are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1984), and the applicable statute of limitations.[7]

*(l.) Heck: Favorable-Termination Rule*

False arrest and malicious prosecution claims under § 1983 are barred unless plaintiff can show the favorable termination of his conviction or sentence.  *Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372; *see also Corley v. Vance*, 2015 WL 4164377, at *3 (S.D.N.Y., June 22, 2015) (holding that false arrest and malicious prosecution claims are barred if the criminal proceedings were not terminated in the plaintiff's favor)

---

[6]The Court acknowledges that before a court can dismiss a complaint *sua sponte* on the basis of the statute of limitations and other affirmative defenses, the court generally must provide plaintiff notice and an opportunity to be heard, *Abbas*, 480 F.3d at 639.  In this case, however, the Court finds that notice and an opportunity to be heard would be unnecessary and moot because the claims that are barred by the statute of limitations also fail to state a claim upon which relief can be granted and are, accordingly, being dismissed.

[7]These claims also are time-barred pursuant to the applicable three-year statute of limitations. *See Owens*, 488 U.S. at 251, 109 S. Ct. at 582; *see also Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (a false arrest claim accrues on the date on which plaintiff was arraigned on the charges, or "when legal process was initiated against him....")

(internal citations omitted); *Jefferson v. Chicara*, 2015 WL 1439932, at *4 (E.D.N.Y. Mar. 26, 2015) (finding that plaintiff failed to state a § 1983 false arrest claim because the underlying conviction had not been invalidated).

In *Heck*, the United States Supreme Court, recognizing the overlap between § 1983 and the federal habeas corpus statute, *see Preiser v. Rodriquez*, 411 U.S. 475, 500, 93 S. Ct. 1827, 1841, 36 L. Ed.2d 439 (1973), and "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . .", held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486–87; 114 S.Ct. at 2372. "Generally, a claim for damages relating to a conviction that has not been invalidated is not cognizable under § 1983, because 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Daniels v. Bonilla*, 2015 WL 4894683, at *6 (E.D.N.Y. Aug. 17, 2015) (quoting *Heck*, 512 U.S. at 487, 114 S.Ct. at 2372).

Accordingly, because plaintiff has not alleged that his conviction and sentence have been reversed, expunged, or declared invalid, *see Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372, his claims of false arrest and malicious prosecution must be dismissed.

2. Second Claim

Plaintiff alleges that at his sentencing, defendants Frank Clark, former District Attorney; Frank Sedita, current District Attorney; Christopher Belling and Thomas Finnerty, Assistant District Attorneys ("ADAs")--the ADAs directly involved in plaintiff's prosecution--; the Legal Aid Bureau--the legal services organization that employed Daniel DuBois, plaintiff's criminal defense attorney--; Judge Sheila DiTullio, Erie County Court--the Judge who presided over plaintiff's trial and sentencing--; and Michael Green, Executive Director, "New York State Division of Criminal Justice Service Record Review," disclosed and released confidential and sealed records regarding plaintiff's prior Youthful Offender Adjudication and ACD, *see* N.Y. Crim.Proc.L., § § 170.56(4), 720.35. These records were then relied on to enhance plaintiff's sentence as a Second Violent Felony Offender. (Complaint, Handwritten Attachment, Second Claim, at pp. 33-37.)

Plaintiff claims a violation of his right against double jeopardy and that he was maliciously prosecuted and illegally sentenced as a Second Violent Felony Offender based on the disclosure of his sealed prior criminal adjudications. He seeks dismissal of the indictment, a reduction in his sentence and that a new "legal" sentence be imposed under the "Armed Felony Clause . . . for the Violent Felony Offender [and]/or a sentence to the D-Felony as prescribed by [N.Y. Penal Law, §] 70-02, sub (4)," and

monetary damages, including "false imprisonment wages" for each day after the sentence is corrected. (*Id.*, at pp. 36-37.)

(a.) <u>Unlawful sentence claims</u>

To the extent that success on this claim "would necessarily imply the invalidity of [plaintiff's] conviction or sentence," it must be dismissed because plaintiff has not alleged and cannot demonstrate that the conviction or sentence has been invalidated. *Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372, 129 L.Ed. 2d 383. Plaintiff claims that his sentence was unlawfully increased based on his prior Youthful Offender and ACD disposition, which were disclosed by defendants during his sentencing proceedings. Clearly, a finding in favor of plaintiff on this claim would necessarily imply the invalidity of plaintiff's sentence and, therefore, the claim is not cognizable under § 1983 and must be dismissed. *See also* n.7 (this claim also is barred by the statute of limitations).

(b.) <u>Absolute judicial and prosecutorial immunity</u>

As noted, plaintiff sues the Judge who presided over his trial and sentencing and the prosecutors involved in his prosecution. The claims against the Judge and prosecutors also must be dismissed on the basis of absolute judicial and prosecutorial immunity.

*(I.) Absolute Judicial Immunity*

Plaintiff alleges that Judge DiTullio unlawfully sentenced him based on prior criminal records that should have been sealed and should not have been used to increase his sentence. It is well-settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L.Ed.2d 9 (1991).

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.*, at 10, 287 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)). The protection of immunity is not pierced by allegations that the judge acted in bad faith or with malice, *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967), even though unfairness and injustice to a litigant may result on occasion, *Mireles*, 502 U.S. at 9, 112 S. Ct. at 286. The United States Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to 42 U.S.C. § 1983. *See Pierson*, 386 U.S. at 547, 87 S.Ct. at 1213; *see also Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (Claims for injunctive relief also are barred against judicial officers under § 1983 where plaintiff does not allege violation of a declaratory decree nor unavailability of declaratory relief); 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.")

There are no allegations that Judge DiTullio acted outside the scope of her judicial responsibilities when sentencing plaintiff. Accordingly, she is entitled to absolute judicial immunity for any and all claims alleged in the complaint.

### (ii.) Absolute Prosecutorial Immunity

In addition to judges, prosecutors performing traditional prosecutorial activities are given absolute immunity in § 1983 suits. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28, 96 S.Ct. 984, 993-94, 47 L.Ed.2d 128 (1976). "The absolute immunity

17

accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution . . . activities in deciding not to do so . . . and conduct of plea bargaining negotiations. . . ." *Barrett v. United States*, 798 F.2d 565, 571-572 (2d Cir. 1986) (citing *Lee v. Willins*, 617 F.2d 320 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *Dacey v. Dorsey*, 568 F.2d 275, 278 (2d Cir.), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); *Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981)).

Plaintiff's claims against the prosecutors herein relate exclusively to their role in the prosecution of plaintiff, including the sentencing proceeding at issue. These claims fall squarely within the activities closely associated with litigation and those for which prosecutors are accorded absolute immunity. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149-50 (2d Cir. 1995) ( "[W]e have previously said that conduct in a 'sentencing proceeding' would be protected by absolute prosecutorial immunity[.]") (quoting *Taylor v. Kavanaugh*, 640 F.2d at 451-52 (2d Cir. 1981)). Accordingly, defendants Clark, Sedita, Belling and Finnerty[8] are entitled to absolute prosecutorial immunity for the claims alleged herein.

---

[8]The complaint names another Assistant District Attorney as a defendant, Michael Hillery, but the Court can locate no allegations in the complaint against him. The Court presumes he was the ADA who opposed plaintiff's post-conviction collateral relief motion pursuant to Crim.Proc.L. § 440.10 and 440.20, and he thus would be entitled to absolute immunity for those activities.

Additionally, to the extent plaintiff names the Legal Aid Bureau, as the employer of his criminal defense attorney, Daniel J. DuBois, neither the Legal Aid Bureau nor Dubois are persons acting under color of state law and thus are not subject to liability under § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

### 3. Third Claim

This claims revolves around plaintiff's assertion that the defendants involved in his arrest and prosecution--District Attorneys Clark and Sedita; ADAs Finnerty and Belling; Judge DiTullio; and Homicide Detective Lauber and Donavan--, in addition to defendants Justice Fahey, Associate Justice, New York State Supreme Court, Appellate Division, Fourth Department, and Jody Lomeo, Acting Administrator/CEO, Erie County Medical Center ("ECMC"),[9] were aware that the victim of the robbery and shooting died not from the gunshot wound but the medical malpractice of a physician at ECMC, who left a lap pad in the victim during surgery, and concealed such evidence from the Grand Jury.  Attempting to follow the logic of plaintiff's assertions, it appears that plaintiff's claim is that the Homicide Detectives and prosecutors "suppressed" the evidence of the true cause of the victim's death in order to maliciously prosecute and indict him on the Felony Murder charge thus denying him a fair trial on the Robbery and Criminal Possession counts.  In other words, the Felony Murder charge was used to prejudice his right to a fair trial on the other counts.  If the evidence of the victim's cause of death had been presented to the Grand Jury, plaintiff claims he would not have been indicted on Felony Murder.  (Complaint, Handwritten Attachment, Third Claim, at pp. 40-44.)  Plaintiff also alleges that the negligence of the ECMC physician "caused false malpractice to the victim . . . further causing the miscarriage of justice, pain and suffering . . . through malicious prosecution, prejudicial retaliation tactics used by the court expressing its mercy through emotional misconduct."  (*Id.*, at p. 46.),

---

[9]Plaintiff also may have intended to name as defendants, in addition to Lomeo, ECMC, its Chief Legal Officer and the physician who committed the malpractice alleged.  (Complaint, Handwritten Attachment, at p. 40.)  Because the Complaint is being dismissed, this question is moot.

Plaintiff claims that Judge DiTullio became "emotionally" involved and harshly judged and sentenced him to the maximum sentences allowed because she "couldn[']t sentence him for . . . Murder . . . [and]/or she emotionally felt that [plaintiff] should suffer because the victim suffered tremendous pain before he died." (*Id.*, at p. 43; *see also id.*, Exhibit--Sentencing Proceeding Transcript, at pp. 48-56.)  Plaintiff claims he exhausted his administrative remedies for these claims when he filed a motion for post-conviction collateral relief pursuant to N.Y. Crim.Proc.L., § 440.10 and 440.20, which was denied by Judge DiTullio.  Plaintiff then sought leave to appeal, which was denied, presumably, by Justice Fahey of the Appellate Division, Fourth Department. (*Id.* at p. 47.)

Plaintiff seeks millions of dollars in damages based on his claims of "malicious prosecution," "cruel and unusual punishment," "double jeopardy," a denial of due process and the right to a fair trial and fair grand jury proceedings, and the withholding of *Brady*[10] material. (*Id.*, at pp. 44-45.)

(a.) Malicious prosecution and other claims related to conviction or sentence

This claim, like the previous claims, is not cognizable under § 1983 because plaintiff's conviction and sentence have not been reversed, overruled, expunged or called into question in any way.  *Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372.  Any issues related to the testimony presented during the Grand Jury and whether the prosecution failed to disclose Brady material are "'within the traditional core of *habeas*

---

[10]*Brady v. Maryland*, 373 U.S. 83, 89, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.")

*corpus* and outside the province of Section 1983.'" *Daniel*, 2015 WL 4894682, at \*6 (quoting *Skinner v. Switzer*, 562 U.S. 521, 536, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011)).  "Brady violations are remedied by a vacatur of the conviction and a new trial, which necessarily implies the invalidity of the challenged conviction.  *Id.* (citing *Poventud v. City of New York*, 750 F.3d 121, 132-33 (2d Cir. 2014); *Amaker v. Weiner*, 179 F.3d 48, 51-52 (2d Cir. 1999)).  Accordingly, this claim must be dismissed in its entirely.

(b.) <u>Absolute judicial and prosecutorial immunity</u>

Again, to the extent plaintiff sues District Attorneys Clark and Sedita, Assistant District Attorneys Finnerty, Belling, and Hillery, Judges DiTullio and Fahey, they each are entitled to absolute immunity for the claims alleged herein.  *See* Discussion, 2(b)(i)-(ii), at pp. 16-19, *supra*.

## CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee.  Accordingly, plaintiff's request to proceed *in forma pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A. Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438, 82 S.

Ct. 917, 8 L. Ed.2d 21 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## ORDERS

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the complaint is dismissed with prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

SO ORDERED.

Dated:      October 8 , 2015
            Buffalo, New York

_____
WILLIAM M. SKRETNY
United States District Judge